**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
MITCHELL H. COHEN U.S. COURTHOUSE
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

**Andrew B. Altenburg, Jr.**                                                                                                                 (856) 361-2320
**U.S. BANKRUPTCY JUDGE**

August 7, 2019

| | | |
|---|---|---|
| Jenny R. Kasen, Esq. | Harold Kaplan, Esq. | Fred Hoensch, Esq. |
| Kasen & Kasen | RAS Citron, LLC | Parker Ibrahim & Berg LLP |
| 1874 E. Marlton Pike, Suite 3 | 133 Gaither Dr. | 1635 Market St, 11th Floor |
| Cherry Hill, NJ 08003 | MT Laurel, NJ 08054 | Philadelphia, PA 19103 |

**RE:  In re Duffy**
    **Bankr. Case No. 18-29575-ABA**

Dear Counsel,

The court has received your supplemental briefs on Deutsche Bank's Motion to amend the court's order of May 23, 2019 (Doc. No. 77, the "Order") that denied debtor Anona Duffy's motion to enforce settlement. It is now prepared to rule in Deutsche Bank's favor.

Deutsche Bank had objected that the introductory paragraphs in the Order "misstate[d] certain facts and lead to the impression that [Deutsche Bank] is bound by certain provisions it had agreed to in negotiations even though the Court ruled that neither the debtor nor the Secured Creditor had agreed to the complete Stipulation/Settlement." Doc. No. 80, at ¶ 2. It argues that "While the second introductory paragraph of the Order accurately states that the Secured Creditor had agreed to 'an amount to be paid and interest rate, but not as to how the payment would be made over the life of the plan,' the Order does not include the Court's ruling that neither the Debtor nor the Secured Creditor had agreed to the complete Settlement." *Id.*, at ¶ 8. "The Order therefore gives the impression that having agreed to two of the three terms set forth, namely valuation and interest rate, that the Secured Creditor is bound to these terms notwithstanding the fact the Court ruled neither the debtor nor the Secured Creditor had agreed to all of the terms of the Stipulation/Settlement." *Id.*, at ¶ 9. It asks the court to strike that part of the Order so that it is not bound to those terms going forward. *Id.*, at ¶ 11.

Deutsche Bank also contends that the Order incorrectly set forth its argument about Ms. Duffy's principal residence as Deutsche Bank contending that it never would have proposed the settlement terms had it known that the property was her principal residence. *Id.*, at ¶ 3. Instead, it argues that it merely alleged that Ms. Duffy wrongly used the Broomall address on her petition to overcome the anti-modification clause of 11 U.S.C. § 1322(b)(2) to permit a cramdown. *Id.*, at ¶ 5. Deutsche Bank asks that the court also strike this part of the order. *Id.*, at ¶ 7.

In asking both counsel whether they had agreed preliminarily to a repayment of $250,000 at 4.5 percent interest, over the 60 months of the plan, with payments to be made through the chapter 13 trustee, the court meant only to establish what the parties had or had not agreed to. It agrees that those terms were only agreed to in negotiations, for the purpose of resolving Deutsche Bank's objection to confirmation, and Deutsche Bank is not bound to them in future negotiations.

For one, the court notes that, in general,

> [a] contract is formed where there is offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. *See Weichert Co. Realtors v. Ryan,* 128 N.J. 427, 435, 608 A.2d 280 (1992). That contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms. *See id.* Where the parties do not agree on one or more essential terms, however, courts generally hold that the agreement is unenforceable. *See id.*

*United States v. Lightman*, 988 F. Supp. 448, 458 (D.N.J. 1997). How payment is to be made is usually an essential term. *See Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F. Supp. 562, 572 (D.N.J. 1997) ("In order for performance by each party to be ascertainable with reasonable certainty, a contract that renegotiates a debt must at the least include the amount and the payment schedule."); *V.M. by Murphy v. Jersey Shore Univ. Med. Ctr.*, A-0781-16T1, 2017 WL 5076378, at *4 (N.J. Super. Ct. App. Div. Nov. 3, 2017) (holding that no settlement was reached where the parties agreed to the amount, "[b]ut the specific methods by which those funds would be allocated and paid were not agreed upon in full."). *But see Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993) ("Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges.").

Here, the difference between equal payments over 60 months and what Ms. Duffy proposed is extreme. The monthly payment would not adequately protect Deutsche Bank, unfairly shifting all risk of loss to it. *See In re DeSardi*, 340 B.R. 790, 810 (Bankr. S.D. Tex. 2006) (explaining that a balloon payment in the 60th month when the car would be worth less than the balloon payment puts all risk of loss on the car lender). This despite that Deutsche Bank, too, was defrauded by the people who defrauded Ms. Duffy. Accordingly, the payment term was essential, and the parties never agreed.

> The general rule under New Jersey law is that the consent of the party is necessary to settle the case unless the party specifically authorizes an attorney to settle. *Amatuzzo v. Kozmiuk,* 305 N.J. Super. 469, 475, 703 A.2d 9 (App. Div. 1997). To determine whether an attorney has authority to bind a client to a settlement agreement, New Jersey courts apply the principles of agency law and look to whether the attorney had actual or apparent authority to settle the matter. *See McDonnell,* 2007 WL 2814628 at *8–9. An attorney has apparent authority if he or she was knowingly placed by the client in a situation where the other parties were justified in believing that such authority existed. *See Lightman,* 988 F. Supp. at 464–5. New Jersey courts have specifically held that "[s]ending an attorney to a settlement conference presumptively establishes that the attorney has the authority

2

to settle." *Maiellano v. World Travel Group, Inc.,* 2009 WL 605264, at * 2 (citations omitted). Indeed, "[a]pparent authority may even be found where the principal denies having granted authority to settle, but nevertheless places the attorney in a position where a person of ordinary prudence, conversant with business usages and the nature of the particular business is justified in presuming that such agent has authority to perform the particular act in question." *Id.*

*Alexander v. New Jersey Dep't of Transp.*, CIV.A. 11-3348 PGS, 2013 WL 5180677, at *5 (D.N.J. Sept. 13, 2013).

Here, when the debtor's attorney sent a draft stipulation on December 28, she wrote that "The Debtor has not yet authorized me to execute same" but that she "figured it makes more sense to first lock down language acceptable to Deutsche Bank before having the Debtor sign off on same." Doc. No. 43-1, p. 2. On January 4, 2019, SPS's attorney replied that she was sending the proposed settlement to her client, SPS, "for approval," who was "in agreement with the terms so long as the cram down amount is paid over the 60 months of the plan." Doc. No. 43-2, p. 2. SPS then rejected the proposed settlement because of the balloon payment, arguing that it had not agreed to this. Doc. No. 60-1, p. 3. Though the secured creditor's attorney could have been more specific about the amount being paid over the 60 months in equal payment, by stating that she had to send the proposal to her client for approval, she clearly had not accepted the terms on its behalf.

Moreover, the settlement sought to be enforced was Ms. Duffy's response to Deutsche Bank's objection to confirmation. Thus, even had the court found that a contract had been formed, once it denied confirmation as not feasible,[1] the parties were returned to the negotiating table, not bound to any terms previously discussed. Deutsche Bank is not legally bound now to negotiate with Ms. Duffy only as to $250,000 at 4.5 percent interest.

As for Ms. Duffy's principal residence, her testimony at the May 15, 2019 hearing established that the New Jersey property is her principal residence, *see* Doc. No. 89, p. 44 (testimony of Ms. Duffy that her residence is in North Wildwood, she has a New Jersey driver's license, her motor vehicle is registered there, and she files New Jersey, not Pennsylvania tax returns); p. 56 (Ms. Duffy stating regarding the Broomall, Pennsylvania address: "I – I really don't – wouldn't say I live there. I'm kind of back and forth."). Accordingly, Ms. Duffy cannot modify Deutsche Bank's rights without its consent. *See* 11 U.S.C. §§ 1322(b)(2),[2] 1325(a)(5)(A). Therefore, it does not matter at this time whether Deutsche Bank would not have offered what it

---

[1] Since the plan was not feasible, the court did not address whether a balloon payment violates the equal payment provision of 11 U.S.C. 1325(a)(5)(B)(iii)(I).

[2] The debtor stated in her Motion to Enforce Settlement that "It is the Debtor's position that the Deutsche Bank mortgage is not subject to the anti-modification exception found in Bankruptcy Code section 1322(b)(2)." Doc. No. 42, ¶ 35. She did not explain the basis for this statement, possibly thinking that because she is not liable under the note and mortgage held by Deutsche Bank, the provision does not apply. However, Deutsche Bank holds a mortgage secured by her principal residence. A debtor may not modify a "claim secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1322(b)(2). That the debtor is not the signatory to the note or mortgage is no matter: a claim against property of the debtor is a claim against the debtor. 11 U.S.C. § 102(2). Thus, the anti-modification provision applies here. *See In re Anderson*, 458 B.R. 494, 502 (Bankr. E.D. Wis. 2011) (holding that debtors who took property subject to a note and mortgage could not strip down mortgage since that improperly modified the rights of a creditor whose claim was secured solely by interest in real property that was their principal residence).

offered had it known that the North Wildwood property was Ms. Duffy's principal residence—that offer terminated.

The court's finding that the parties had a meeting of minds over some terms was for the purpose of confirming Ms. Duffy's proposed chapter 13 plan, resolving Deutsche Bank's objection. By denying confirmation of that plan, the objection if not effectively granted, became moot. Ms. Duffy must start over negotiating an arrangement with Deutsche Bank that is mutually acceptable. An amended order will be entered.

Very truly yours,

Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

cc:

Isabel C. Balboa
Chapter 13 Standing Trustee
Cherry Tree Corporate Center
535 Route 38 - Suite 580
Cherry Hill, NJ 08002